UNITED STATES DISTRICT COURT　　　　SOUTHERN DISTRICT OF TEXAS

In re § 
§ Civil Action H-08-1386
George M. Shead, §
§ Bankruptcy H-07-34357
Debtor. §

## Opinion on Dismissal

1.  *Introduction.*

George Martin Shead is a petitioner under Chapter 13. This Court withdrew the reference. Because Shead filed his petition in bad faith, it will be dismissed with prejudice to refiling for 180 days.

2.  *Disclosures.*

Shead's original Statement of Financial Affairs and Schedules and amendments to it was erroneous and contained misleading information. Question 18 of the Statement requires Shead to disclose whether he is a partner of a partnership or officer of any corporation. Shead initially represented that he was neither a partner nor an officer. In his initial Schedule B, Shead did not disclose that he about owned stock in a corporation or had an interest in a partnership.

After Francis J. Kelly, Shead's partner, moved to dismiss this case for bad faith, Shead amended his Schedule B and Statement to reflect his interest in Frankngeorge, LLC, and a partnership Shead-Kelly Investments, Ltd.

Shead's initial failure to disclose his partnership was not the result of mere inadvertence. In his schedules, Shead represented that he was either the owner or co-owner of several pieces of real estate located in Galveston, Texas, representing to the court that he owned these properties in his individual capacity and that no partnership ever existed.

Approximately three months later, Shead filed an adversary proceeding against Kelley asserting that: (a) a partnership existed; (b) the partnership owns the properties; and (c) Kelly was obliged to this partnership.

In the hearing, when questioned by the court, Shead's counsel conceded that Shead filed his bankruptcy because one of the partnership properties was on the verge of foreclosure. Thus,

Shead admitted then and on later occasions that Shead's purpose in filing petition was to protect partnership assets from foreclosure.

Shead's initial plan and amended ones all propose to pay the liens on the partnership assets. Meanwhile, Shead admitted that several of the properties are in disrepair and cannot be rented – about one-half the total units in the seven properties are occupied – and that Shead does not have the $50,000 needed to restore them to a rentable condition.

Nowhere in Shead's schedules does he describe Kelley's interest in the land – not as partner or co-tenant – or that he might have an interest in "Shead's" asset. He said only that Kelley is a co-debtor based on Kelley being a co-maker on the mortgages on the investment properties. Yet, he knew that Kelley and he had joint interests and were at odds with each other. At a minimum, he should have scheduled Kelley as holding a contingent claim. Shead certainly could have listed the claim as disputed, but he had a duty to disclose that Kelley himself was asserting a claim against the assets.

Shead disclosed the facts that he liked, and he selected when to disclose the others as they suited his underlying purpose of taking control of the partnership properties.

At a hearing, Shead admitted that he had refused to provide Kelly with copies of books and records related to the partnership. This admission underscores that Shead has been using the Chapter 13 process to squeeze Kelly out from their partnership. In addition to misusing the bankruptcy process to avoid his fiduciary duties to his partner, Shead has also abused the process by refusing to allow the lien-holders on the properties to inspect their collateral.

Recently, Shead has claimed that he could not comply with the order to deliver to Kelley some of the records relating to the partnership because his computer is broken. That is a suspiciously convenient technical problem. Of course, the bank records of what Shead has been doing with the limited rental income could have been re-obtained from the banks.

Shead is in the real-estate business; he is not confused.

3.    *Consequences.*

Among the causes that may produce a dismissal with prejudice is filing a bankruptcy petition in bad faith. 11 U.S.C. § 1307(c); *In re Russell*, 348 B.R. 441, 447 (Bankr. S.D. Tex. 2006). "Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and

the local financial realities." *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986).

    A.    *Partnership.*

Shead's petition was an attempt to use Chapter 13 to reorganize his partnership with Kelley. "It is a fundamental principle of bankruptcy law that a partnership entity cannot file for relief under Chapter 13 which under 11 U.S.C. § 109(e) is limited to an individual with regular income. As a corollary to this principle, partnership assets may not be administered in an individual partner's Chapter 13 case." *In re Fisk*, 36 B.R. 924 (Bankr. W.D. Mich. 1984) (citing *In re Tegtmeyer*, 31 B.R. 555 (Bankr. S.D. Ohio 1983)); *see also In re Krokos*, 12 B.R. 520, 521 (Bankr. S.D.N.Y. 1981); *Forestry Products, Inc. v. Hope*, 34 B.R. 753, 754-55 (M.D. Ga. 1983) (discussing legislative history of 11 U.S.C. § 109(e) plainly saying that Congress intended to exclude partnerships from Chapter 13).

Shead's initial and amended schedules list the properties, which he concedes are partnership assets. This improper scheduling was an attempt by Shead to bring the properties into his individual bankruptcy estate. Initially, Shead did not even schedule his interest in the partnership itself and only made that amendment to his Schedules and SOFA after Kelley filed the motion to dismiss. *See Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats Inc.)*, 374 F.3d 330, 336 (5th Cir. 2004) (debtors should not be rewarded for amending their schedules only after their omission has been challenged). The plans proposed by Shead all involve payments on the arrearages owed under the properties' mortgages as if they were his.

As expressed in his schedules and statements in court, Shead clearly intended to reorganize the debts of his partnership with Kelley through his Chapter 13 petition. The same result could have been achieved through filing an involuntary Chapter 11 case against the partnership, but Shead instead attempted to file this Chapter 13 case in bad faith. A bankruptcy petition filed by fewer than all of the general partners must be an involuntary petition. 11 U.S.C. §§ 303(b)(3)(A) and (d); *see also In re Seychelles*, 30 B.R. 72, 74 (Bankr. N.D. Tex. 1983).

B.     *Ordinary Dispute.*

Shead's statement and schedules reveal that this was essentially a two-party dispute that should not have been litigated through bankruptcy. "Two-party disputes such as this simply have no place in bankruptcy . . . . Many courts have found that such filings violate the 'good faith' prerequisite to invoking the bankruptcy court's equitable jurisdiction." *In re Anderson Oaks L.P.*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987). At its plainest, Shead's repeated confession that he only brought the petition to impede the foreclosure of partnership assets, even without the secondary motive of forcing Kelley from this interests, is a petition filed in bad faith. *In re Landmark Capital Co.*, 27 B.R. 273 (Bankr. D. Ariz. 1983) (inequitable to have the sole purpose of frustrating a secured lender's mortgage rights).

C.     *Management.*

Bankruptcy law is not implicated in a two-party dispute, particularly when the parties are partners; state laws address those claims. *See In re Mazzocone*, 183 B.R. 402, 419 (Bankr. E.D. Pa. 1995); *In re Beacon Reef Limited Partnership*, 43 B.R. 644, 646-47 (Bankr. S.D. Fla. 1984) (abstaining from an involuntary petition in dispute between the general partners and the sole limited partner); *see also In re Fax Station, Inc.*, 118 B.R. 176, 178 (Bankr. D. R.I. 1990) (dismissing a case that was an attempt "to use the bankruptcy court as an alternate approach to state court procedures to resolve an intra-company management and stockholder problem.") (quoting *Matter of Win-Sum Sports, Inc.*, 14 B.R. 389, 394 (Bankr. D. Conn. 1981)); *see also In re ABQ-MCB Joint Venture*, 153 B.R. 338, 341 (Bankr. D. N.M. 1993) (dismissing a bankruptcy case because the debtor was "seeking to use this bankruptcy proceeding to resolve its intra-partnership disputes.").

Although Shead's case involves two lenders holding liens on the properties and his home mortgage, the real dispute that Shead sought to resolve was management and control of the partnership's assets. Shead could, and should, have filed a state court suit seeking to wind up the partnership and resolve any lingering issues between Kelly and himself. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 64.001(a)(3) and (b) (state law allowing one partner to seek the appointment of a receiver in an action between two partners over property owned jointly or by the partnership). Instead, Shead's Chapter 13 petition was an attempt to frustrate the ability of the secured creditors to exercise their state court rights to foreclose on the properties and to

preempt the ability of Kelley to resort to his remedies under Texas law, including filing suit in state court.

4. *Impracticality*.

Because Shead admitted that he lacked the funds to repair the properties to make them marketable or rentable, he had no ability to propose or obtain confirmation of a plan. "A bankruptcy petition is frivolous under Rule 9011 if it is 'patently clear that [it] has absolutely no chance of success,' or 'if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize.'" *Marti v. Macco (In re Jones)*, 1999 U.S. Dist. LEXIS 20000, at *7-8 (E.D.N.Y. 1999) (quoting *Matter of Cohoes Indus. Terminal, Inc.*, 932 F.2d 222, 227-28 (2d Cir. 1991)); see also *In re Barnes*, 275 B.R. 889, 901 (E.D. Cal. 2002) (proposing a Chapter 13 plan which had no chance of confirmation evidenced bad faith).

Shead's petition is in bad faith because he knew to a certainty at the time of filing that there was no plausible chance of a feasible reorganization. Moreover, he should have known that a partnership may not file a Chapter 13 and no plan could ever be confirmed that attempted to reorganize the debts owed by the partnership. Shead was using Chapter 13 not only for the improper purpose of holding Kelley hostage but for delaying secured creditors from enforcing their rights.

5. *Manipulation*.

After filing his petition in bad faith, Shead's actions continued to display a lack of good faith. He did not disclose his interest in two entities until after Kelley had brought their existence to the court's attention. He did not schedule Kelley as a creditor despite knowing full well that Kelley had, at a minimum, a contingent claim against him; and, finally, when ordered to turn over documents and records related to the properties and the partnership, he claimed that his computer was broken.

Also in violation of the rules, Shead paid his lawyer $5,000 without disclosure or approval – and paid her with partnership funds. The court, on motion or its own initiative, may determine whether fees are excessive under Federal Rule of Bankruptcy Procedure 2017(b). Shead's lawyer was obliged to supplement earlier disclosures when undisclosed payments were received, under Federal Rule of Bankruptcy Procedure 2016(b). Contrary to his lawyer's

assertion, there is no limitation that excludes representation in an adversary proceeding from its coverage.

6.   *Conclusion.*

The Court finds that Shead filed his case in bad faith because (1) he attempted to reorganize his partnership with Kelley through Chapter 13 by dishonestly filing in his personal capacity; (2) this was a two-party dispute between Shead and Kelly involving solely state law causes of action; (3) he simply wanted to impede the mortgagees without a larger restructuring in mind – even ignoring the squeeze on Kelley; and (4) he filed his petition knowing that he lacked funds to support any feasible plan of reorganization that would be confirmable.

Additionally, Shead's post-petition conduct evinces a continuing disregard for complying with fundamental requirements of the bankruptcy process – especially candor.

Signed on May 6, 2008, at Houston, Texas.

_____
Lynn N. Hughes   USDJ
United States District Judge